IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION


STEPHANIE ANN MOSLEY,                                                    PLAINTIFF

v.                                                        Civil Action No.: 2:08CV97-SAA

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                         DEFENDANT


**MEMORANDUM OPINION**


This case involves an application under 42 U.S.C. § 405(g) for judicial review of the

decision of the Commissioner of Social Security denying the application of plaintiff Stephanie

Ann Mosley for a period of disability (POD) and disability insurance benefits (DIB) under

Section 216(I) and 223 of the Social Security Act. Plaintiff applied for benefits on August 3,

2005, alleging that she became disabled June 15, 1999, due to inability to concentrate, to get

along with anyone, including co-workers or supervisors, and her dislike of strangers. The

plaintiff's claim was denied initially and on reconsideration. Plaintiff requested an

administrative hearing which was held on September 20, 2007. The ALJ issued an unfavorable

decision on September 26, 2007, and plaintiff properly filed a request for review with the

Appeals Council. The Appeals Council denied plaintiff's request for review. The ALJ's

decision is now ripe for review.

**FACTS**

The plaintiff was born in 1963, and she is a high school graduate. (Tr. 18). Her past

relevant work is as a waitress and cashier. (Tr. 18, 205). In an October 2005 consultative

psychological evaluation, plaintiff revealed that although she had finished high school, she had to

cheat to pass. (Tr.46, 168.). She reported that she had last worked at Shoney's in 1999 but had

been laid off. (Tr. 168). At the hearing before the ALJ, plaintiff testified that after she was laid

off in 1999 she did not seek other employment because she knew that bosses would continue to

treat her badly and she would just embarrass herself. (Tr. 31 - 32.)

In her application, plaintiff contends that she became disabled in June 1999 due to bipolar

disorder and her inability to concentrate, dislike of strangers and inability to get along with

others. (Tr. 135.) Yet in response to the question, "Why did you stop working?" the plaintiff

responded that she was fired for not getting along with fellow employees. *Id.*

In his decision, the ALJ determined that the plaintiff suffered from "severe" impairments,

including bipolar disorder, depression, anxiety and learning disorder/borderline intellectual

functioning (Tr. 14, Finding No. 3), but that these impairments did not meet or equal any

impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. (Tr. 15, Finding No. 4). The ALJ

determined that the plaintiff retains the Residual Functional Capacity (RFC) to perform a full

range of work at all levels, but with the following nonexertional limitations:

> She can understand, remember, and carry out simple instructions and perform
> routine, repetitive tasks. She can concentrate and attend for 2 hours in an 8-hour
> workday on simple 1, 2, or 3 step tasks. She can occasionally interact adequately
> with coworkers, supervisors, and the general public. She can have occasional
> conversations and interpersonal interaction with coworkers and the general public
> and mild-mannered, non-threatening supervisors. She is limited to jobs that do
> not require high stress, production pace work and only occasional work changes.

(Tr. 16, Finding No. 5). Consequently, the ALJ held that the plaintiff did not retain the ability to

perform her past relevant work as a waitress but that there were other jobs in the national

economy that she could perform. (Tr. 18-19.) Accordingly, he found that she was not disabled

under the Social Security Act. (Tr. 20).

On appeal to this court plaintiff raises the following issues:

1. Whether the ALJ erred in "disregarding evidence from both treating and examining medical providers" and in failing to develop the record relating to these providers;

2. Whether the ALJ erred in finding that the plaintiff was not entirely credible; and

3. Whether the ALJ failed to consider the side effects of the claimant's medications.

Docket 14.

## STANDARD OF REVIEW

In determining disability the Commissioner, through the ALJ, works through a five-step

sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps

of this five-step process to prove disability, and if the plaintiff is successful in sustaining her

burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2]

First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second,

the plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or

mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff

is disabled if she proves that her impairments meet or are medically equivalent to one of the

---

[1]*See* 20 C.F.R. §§ 404.1520 (2003).

[2]*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[3]20 C.F.R. §§ 404.1520(b) (2003).

[4]20 C.F.R. §§ 404.1520 (2003).

impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[5] If plaintiff

does not meet this burden, at step four she must prove that she is incapable of meeting the

physical and mental demands of her past relevant work.[6] At step five the burden shifts to the

Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

past work experience, that she is capable of performing other work.[7] If the Commissioner proves

other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that

she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by

substantial evidence and whether the Commissioner used the correct legal standard. *Muse v.*

*Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).

"To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as

adequate to support a conclusion; it must be more than a scintilla but it need not be a

preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted).

Substantial evidence has been defined by the Fifth Circuit as "more than a scintilla, less than a

preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). "If

supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be

---

[5]20 C.F.R. § 404.1520(d) (2003). If a claimant's impairment meets certain criteria, that
claimant's impairments are "severe enough to prevent a person from doing any gainful activity."
20 C.F.R. §§ 404.1525 (2003).

[6]20 C.F.R. §§ 404.1520(e) (2003).

[7]20 C.F.R §§ 404.1520(f)(1) (2003).

[8]*Muse*, 925 F.2d at 789.

affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The ALJ concluded plaintiff's has bipolar disorder, depression, anxiety and a learning disorder/borderline intellectual functioning. (Tr. 14). Nevertheless, at step three the ALJ found that the plaintiff's limitations did not meet or equal any impairment listed at 20 CFR pt. 404, subpt. P, app. 1 (2008). (Tr. 15). The ALJ reviewed the medical records as a whole, considered the credibility of the plaintiff's subjective complaints, engaged in a detailed discussion of the plaintiff's symptoms and factors considered in determining credibility, and appropriately reviewed the plaintiff's mental abilities. He determined at step four that the plaintiff retains the RFC to perform work at all exertional levels but that the her non-exertional limitations would prohibit her from performing her past relevant work. (Tr. 18, Finding No. 6.) By utilizing the testimony of a vocational expert, the ALJ determined at step five of the sequential evaluation process that the plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, including laundry worker, inspector/packer or surveillance system monitor. (Tr. 19). Accordingly the ALJ found that the plaintiff was not disabled under the Act. (Tr. 20, Finding No. 12).

## DISCUSSION

### Is the ALJ's Decision Supported by Substantial Evidence?

The plaintiff argues that the ALJ erroneously disregarded the opinions of Drs. Michael

Whelan and Paul Leonard and the treatment notes from Communicare, accepting in their place an "unacceptable medical source," the Functional Report-Adult completed by plaintiff's friend. Docket 14, p. 14. The plaintiff points out that Dr. Whelan performed a thorough mental exam in 2007. Undoubtedly Dr. Whelan's detailed report, along with Dr. Leonard's report and the Communicare notes, contributed to the ALJ's determination of plaintiff's RFC, particularly with respect to plaintiff's non-exertional limitations, which are consistent with the doctors' reports and Communicare notes. Communicare records reflect that plaintiff has poor concentration and a history of difficulty dealing with co-workers and employers. *See* Tr. 212-213. Dr. Leonard concluded that plaintiff has mild to moderate impairment of social functioning and moderate impairment of adaptability and ability to understand complex information. (Tr. 171).

However, the ALJ accorded "limited weight to the treatment notes from Communicare and the evaluation reports of Drs. Paul Leonard and Michael Whelan . . . . because none of these records date back to the claimant's alleged onset date of disability." (Tr. 18). Plaintiff is correct that the ALJ afforded "some weight" to the report completed by plaintiff's friend Tina Sansone because he found that it might provide insight into the severity of plaintiff's impairment and how it affects plaintiff's ability to function. *Id.* Nevertheless, considering the consistency of the ALJ's decision with the medical evidence in the record and the restrictions placed on plaintiff's RFC in keeping with doctors' opinions, treatment notes and plaintiff's friend's report, the court holds that the decision is supported by substantial evidence. The court finds plaintiff's argument that the ALJ disregarded opinions of treating or examining medical sources or accepted instead the Function Report–Adult completed by plaintiff's friend Tina Sansone is without merit.

Although generally an ALJ should afford controlling weight to the opinions of treating

physicians, an ALJ is free to reject the opinion of any physician – examining or non-examining –

when the evidence supports a contrary conclusion. *Martinez v. Chater* 64 F.3d 172, 176 (5th Cir.

1995); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). In this case, there are no medical

records that are contemporaneous with the plaintiff's June 15, 1999 claimed date of onset of her

disability.[9]

It is the plaintiff's burden to produce evidence, if it exists, sufficient to prove her claims.

*See* Clarification of Rules Involving Residual Functional Capacity Assessments, 68 Fed. Reg. 51

at 153,154-55 (Aug. 26, 2003). Plaintiff contends that the ALJ should have called on a medical

advisor, as allowed in accordance with Social Security Ruling ("SSR") 83-20. SSR 83-20

prescribes the policy and procedure by which the Commissioner determines the onset date of a

disability. *See* SSR 83-20 (1983). Factors relevant to the determination of a non-traumatic

disability onset include the individual's allegations, her work history and the medical evidence.

SSR 83-20. *See also Ivy v. Sullivan,* 898 F.2d 1045, 1048 (5th Cir.1990). These are elements

that the ALJ considered in making his decision; however, the plaintiff's argument regarding

SSR83-20 must fail as it is simply does not apply to this case. *Nix v. Barnhart*, 160 Fed. Appx.

393, 2005 WL 3505246 (5th Cir. 2005) (holding that absent an ALJ's finding of disability, there

is no need to infer an onset date and thus SSR 83-20 does not apply).

Next plaintiff contends that the ALJ had a duty to recontact Dr. Saini with Communicare

---

[9]Plaintiff testified at the hearing that she "went to Desoto Wellness Clinic and I went to this place in South Haven [sic]." in 1999 and 2000, however she had no recollection of the psychiatrist's name or the office or location of the office. (Tr. 32). Plaintiff failed to produce records from either source. Plaintiff did provide records of treatment from Charter Behavioral Health Systems relating to treatment from May 2000 to October 2000 to the Appeals Council. (Tr. 230 - 242). The Appeals Council reviewed the evidence and determined that it did not provide a basis for changing the ALJ's decision. (Tr. 3).

as the plaintiff's treating physician. An ALJ has a duty to contact a treating physician or other

medical sources "[w]hen the evidence. . . receive[d] from [a] treating physician . . . is inadequate

. . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These

regulations further provide that "additional evidence or clarification" *"will* be sought [emphasis

added by the court] when the report from [a] medical source contains a conflict or ambiguity that

must be resolved, the report does not contain all the necessary information, or does not appear to

be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§

404.1512(e)(1), 416.912(e)(1). The Fifth Circuit has held that generally "a treating physician's

opinion on the nature and severity of a patient's impairment will be given controlling weight if it

is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th

Cir. 1995); see also 20 C.F.R. § 404.1527(d)(2). Although the treating physician's opinion and

diagnosis should be afforded considerable weight in determining disability, "the ALJ has sole

responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901,

905 (5th Cir. 1990). "'[T]he ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion.'" *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)

(citation omitted).

Good cause may exist to allow an ALJ to discount the weight of evidence of a treating

physician relative to other experts where the treating physician's evidence is conclusory, is

unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is

otherwise unsupported by the evidence. *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000).

Further, an ALJ is not required to take a plaintiff's assertion of a treating physician relationship

at face value. *See Taylor v. Astrue,* 245 Fed.Appx. 387, 391 (5th Cir. 2007)(slip op); *Hernandez v. Heckler,* 704 F.2d 857, 860-61 (5th Cir.1983) (affirming ALJ's determination that a doctor who only saw the claimant twice in a 17-month period was not a treating physician). According to the medical records from Communicare in evidence, plaintiff was treated there from March 2005 until August 2007 (at or around the time of the hearing before the ALJ). (Tr. 186-207, 214 - 222). This treatment history, as made available to the ALJ, revealed that although plaintiff was involved in group therapy, the therapist from Communicare did not feel that she knew plaintiff well enough to complete the DDS questionnaire and provided no information beyond plaintiff's records and diagnosis. (Tr. 187). Without additional information, the treatment notes from Communicare provide little reason for the ALJ to have determined that Dr. Saini (who did not complete or sign the forms provided by DDS) had significantly more familiarity or a more detailed or lengthy history of treatment of the plaintiff that would necessitate affording deference over another examining physician.

When an ALJ affords lesser weight to the medical opinions of a treating physician, he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). *Newton* noted the factors that the ALJ must consider under the agency's own regulations before declining to give evidence of a treating physician controlling weight:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2). Social Security Administration Regulations provide that the

Social Security Administration "will always give good reasons in [its] notice of determination or

decision for the weight [it gives the claimant's] treating source's opinion." The regulation is

construed in SSR 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by
> medically acceptable clinical and laboratory diagnostic techniques or is
> inconsistent with the other substantial evidence in the case record means only that
> the opinion is not entitled to "controlling weight," not that the opinion should be
> rejected. Treating source medical opinions are still entitled to deference and must
> be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

*See also Newton*, 209 F.3d at 456.

Under SSR 96- 5p, an ALJ must provide appropriate explanations when he declines to

afford controlling weight to the treating physician's opinions. *Id.* In this case, the ALJ clearly

reviewed Communicare's records in conjunction with Drs. Whelan and Leonard, both of whom

provided more detailed reports and information relating to plaintiff's diagnosis and functional

abilities. In fact, Communicare's records are thoroughly addressed throughout his decision,

along with all the other medical evidence. The ALJ discussed the information provided by all

three medical sources and relied on them to a significant extent in determining the plaintiff's

RFC. Nevertheless, none of these sources had information relating to plaintiff's treatment at or

around the time of her alleged onset date. Recontacting Dr. Saini would not have provided any

additional information as plaintiff's treatment with Communicare did not begin until at least five

and a half years after plaintiff's alleged onset date. In light of these factors and the record as a

whole, and taking into account the hearing testimony of the plaintiff and the VE, the ALJ

afforded limited weight to Communicare's treatment notes regarding the plaintiff. (Tr. 15).

Plaintiff correctly posits that lack of affirmative evidence supporting the ALJ's findings

as to a claimant's residual functional capacity may require remand for further development of the

record. 3 SOCIAL SECURITY LAW AND PRACTICE § 43:14 (Timothy E. Travers *et al.* eds., 1999).

This is true where an ALJ fails to provide appropriate explanations in not affording proper

weight to a plaintiff's treating physicians' opinions. *Newton* 209 F. 3d at 456. In this case, the

ALJ considered the records and medical source statement from Drs. Whelan, Leonard and from

Communicare but found that they were all related to a time period much later than the alleged

onset date and therefore were not entitled to more weight. (Tr. 18). Even though he did not

expressly delineate each individual factor, the ALJ discussed the factors necessary to be

addressed before affording lesser weight to a treating physician and properly determined that

there was good cause for affording Communicare's treatment notes lesser weight. It is clear that

the ALJ carefully considered those records in combination with other sources available to him –

including her own testimony and assessment of daily living activities, the VE's testimony and

applicable regulations – and determined that the plaintiff was not under a disability as defined by

the Act. After diligent review, the court holds that the ALJ's decision was supported by

substantial evidence as required by this Circuit and therefore must be affirmed.


Consideration of Plaintiff's Credibility

Plaintiff argues that the ALJ wrongly found that plaintiff lacked credibility. In his

decision, the ALJ cited to all relevant regulations and applicable Social Security Rulings; upon

review of the standards he stated in relevant part,

The undersigned considered the claimant's allegations and hearing testimony and

finds her to be less than fully credible. The claimant related poor concentration, excessive worry, and inability to follow instructions. However, she reported watching television, cooking, shopping, cleaning house, washing laundry, vacuuming, making the bed, and taking out the trash. She reported enjoying shopping at flea markets and occasionally going to bars with friends. In a Function Report-Adult, Tina Sansone noted the claimant's ability to take her children to school and her husband to dialysis as well as care for her husband, children and family pet dog. She reported the claimant has friends she sees frequently and cooks big meals daily (Exhibit 3E). The claimant's allegations of an inability to concentrate, follow instructions and get along with others appears inconsistent with her daily activities. Additionally, at the consultative examination with Dr. Paul Leonard, the claimant stated she could not perform serial sevens, yet she performed them with no difficulty at the evaluation by Dr. Michael Whelan (Exhibits 1F and 4F). The objective evidence does not support the claimant's significant subjective complaints and restrictions, and none of the medical records submitted indicate any limitations or restrictions for the claimant's activities of daily living. . . .

The claimant's restrictive subjective limitations are not supported by the objective evidence. Particularly troublesome is the lack of evidence dating back to the claimant's alleged onset date of disability and her inconsistent statements. . . . Although the inconsistent statements may not be the result of a conscious intention to mislead, the inconsistencies nevertheless suggest that the information the claimant provided may not be entirely reliable. Considering the foregoing, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 17-18). The plaintiff argues that the ALJ failed to grasp the significance and meaning of Dr. Michael Whelan's lengthy consultative examination and resulting opinion when the ALJ cited inconsistencies in the plaintiff's testimony, complaints and alleged restrictions imposed by her disability and in the objective medical evidence in concluding plaintiff was not entirely credible instead of finding that she has serious emotional problems. The court disagrees.

An ALJ's "determination or decision [of credibility] must contain *specific reasons* for the finding on credibility, *supported by the evidence* in the case record, and must be sufficiently

specific to make clear to the individual and to any subsequent reviewers the weight the

adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996

WL 374186, at *2 (emphasis the court's). Social Security Ruling 96-7p was written to clarify the

procedure to be used in assessing the credibility of a Social Security claimant's statements about

symptoms and pain. *See Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms*

*in Disability Claims – Assessing the Credibility of an Individual's Statements,* SSR 96-7p, at * 1.

The Ruling requires the ALJ to engage in a two-step process. In the first step, the

adjudicator must consider whether there is an underlying medically determinable physical or

mental impairment(s) that could reasonably be expected to produce the plaintiff's pain or other

symptoms. *Id.* at * 2. If the ALJ determines there exists an underlying physical or mental

impairment that could reasonably be expected to produce the plaintiff's pain, he must then

evaluate the intensity, persistence, and limiting effects of symptoms to determine the extent to

which the symptoms limit her ability to do basic work activities. For this purpose, whenever the

plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or

other symptoms are not substantiated by objective medical evidence, the ALJ must make a

finding on the credibility of those statements based by considering the entire case record. SSR

96-7p, 1996 WL 374186, *2.

> When assessing the credibility of an individual's statements, the adjudicator
> must consider:
> (1) the individual's daily activities;
> (2) the location, duration, frequency, and intensity of the individual's pain
> or other symptoms;
> (3) factors that precipitate and aggravate the symptoms;
> (4) the type, dosage, effectiveness, and side effects of any medication the
> individual takes or has taken to alleviate pain or other symptoms;
> (5) treatment, other than medication, the individual receives or has received

for relief of pain or other symptoms;
(6) any measures other than treatment the individual uses or has used to
relieve pain or other symptoms; and
(7) any other factors concerning the individual's functional limitations and
restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 at [*]3; *see* 20 C.F.R. § 404.1529(c)(3)(I)-(vii). Further, "the

adjudicator must consider the entire case record and give specific reasons for the weight given to

the individual's statements." SSR 96-7p, 1996 WL 374186, at [*]4. "All of the evidence in the case

record, including the individual's statements, must be considered before a conclusion can be

made about disability." *Id.* at [*]5. In actuality, the ALJ's characterization quoted above is

consistent with the plaintiff's testimony. His analysis of the objective evidence, including noting

inconsistencies between the plaintiff's testimony and the objective evidence in the record,

underscores his determination of her credibility as intended under applicable rulings and

regulations. Although the ALJ did not reach a result that was favorable to the plaintiff, his

determination was well reasoned and supported by the evidence in the record. Accordingly, the

court holds that the ALJ's determination regarding plaintiff's credibility should be affirmed.


Consideration of the Side Effects of Plaintiff's Medication

Plaintiff argues that because the ALJ violated SSR 96-failed to consider the side effects

of her medication as required by SSR 96-8p and his decision therefore is not supported by

substantial evidence. She points to her testimony at the hearing before the ALJ that her

medications made her "sleepy and sluggish." (Tr. 48). The medical evidence, however,

establishes that plaintiff told Dr. Whelan that although her medicine sometimes helps her sleep,

she often has trouble sleeping and must take Benadryl to help her sleep. (Tr. 209). Similarly

14

treatment notes from Communicare reflect that plaintiff stated that she sleeps excessively during depressive episodes but has no disturbance of sleep during manic episodes. (Tr. 207). In light of the inconsistencies between medical evidence and plaintiff's testimony and the ALJ's finding that plaintiff is not fully credible, the ALJ's failure to mention plaintiff's alleged side effects in a hypothetical posed to the Vocational Expert does not mean that his decision was not supported by substantial evidence. Rather, it suggests that the ALJ did not find that medication side effects were an issue. Indeed, despite asking several other questions of the VE, plaintiff's counsel, who was at the hearing, did not himself ask the VE to consider medication side effects. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders,* 914 F.2d at 617. Courts should strive for "judicial review [that is] deferential without being so obsequious as to be meaningless." *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986). In this case, the requisite "substantial evidence" is clearly contained in the record to support the Commissioner's decision. The court holds that the ALJ's decision should be affirmed.

CONCLUSION

In accordance with this memorandum opinion, the decision of the ALJ is affirmed. A final judgment will issue this day.

THIS, the 5th day of January, 2010.

        /s/ S. Allan Alexander
        UNITED STATES MAGISTRATE JUDGE